## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

DANIEL WESLING,

       Petitioner,

  v.

WARDEN ERIC TICE, et al.,

       Respondents.

CIVIL ACTION NO. 3:18-CV-02405

(JONES, J.)
(MEHALCHICK, M.J.)

### MEMORANDUM

In November 2018, Daniel Wesling filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in the United States District Court for the Western District of Pennsylvania. (Doc. 1-3; Doc. 2). Contemporaneously therewith, Wesling filed a motion for a stay and abeyance of his petition to permit him to exhaust some claims in petition he filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, and he also filed a motion for leave to proceed *in forma pauperis*. (Doc. 1-4; Doc. 3; Doc. 1). The Western District transferred the petition to the Middle District and deferred Wesling's stay application for this Court's resolution. (Doc. 4; Doc. 5; Doc. 6; Doc. 4, at 5 n.3). The undersigned provided Wesling with an opportunity to withdraw the petition to file an all-inclusive petition, and Wesling elected to proceed on the petition as filed. (Doc. 7; Doc. 8; Doc. 9).[1] On May 21, 2020, Wesling responded to the show-cause order. (Doc. 14; *see* Doc. 11; Doc. 12).

---

[1] Before electing to proceed on his petition as filed, Wesling filed a Notice of Intent indicating that he wished for the Court to grant a stay pending his pursuit of claims in state court. (Doc. 8, at 1).

For the reasons that follow, the Court will grant Wesling's motion for a stay (Doc. 3) on condition that he inform the Court within 30 days of the disposition of his second PCRA petition,[2] which is now pending on appeal. Additionally, Wesling's motion for an *in forma pauperis* (Doc. 1; Doc. 1-1) will be granted.

## I.   BACKGROUND AND PROCEDURAL HISTORY

In June 2009, the Commonwealth filed an information charging Wesling with several counts of sexual offenses committed against two sisters, who were born in 1981 and 1984, between January 1, 1990, and December 31, 2001 (later amended to reflect a November 5, 2000 end date). *Com. v. Wesling*, No. 1386 EDA 2014, 2015 WL 6956554, at *1-2 (Pa. Super. Ct. June 30, 2015). In October 2013, a Monroe County jury convicted Wesling of rape, attempted rape, aggravated indecent assault, sexual assault, statutory sexual assault, indecent assault, and unlawful contact with a minor. *Wesling*, 2015 WL 6956554, at *1; *see Commonwealth v. Wesling*, Docket No. CP-43-CR-0001697-2012 (Monroe County C.C.P.).[3] The victims' trial testimony indicated that Wesling had perpetrated a "protracted course of

---

[2] "A motion to lift a stay is addressed to the sound discretion of this Court." *Hayes v. Tice*, No. 17-CV-198, 2019 WL 8275327, at *3 (W.D. Pa. Dec. 10, 2019) (citing *Desrosiers v. Atty. Gen. of New Jersey*, CV 17-5785 (RBK), 2018 WL 3031939, at *2 (D.N.J. June 19, 2018); *Miller v. Trans Union, LLC*, 3:12-CV-1715, 2015 WL 13649106, at *2 (M.D. Pa. Aug. 3, 2015). ("[T]he decision to grant, deny or lift a stay rests within the jurisdiction and sound discretion of a United States Magistrate Judge under 28 U.S.C. § 636(b)(1)(A), subject to appeal to the district court for an abuse of that discretion.")), *reconsideration denied*, No. 17-CV-00198, 2020 WL 1450271 (W.D. Pa. Mar. 25, 2020).

[3] Wesling was initially represented by Robin Spishock, Esq., and then by a trio of attorneys – George Henry Newman, Esq., Michael Salnick, Esq., and Jack Fuchs, Esq. – who represented him at trial.

sexual assaults . . . over the span of a decade in both Pennsylvania and New Jersey." *Wesling*, 2015 WL 6956554, at *1. The trial court sentenced him, in March 2014, to an aggregate term of from 15 to 30 years' incarceration. *Wesling*, 2015 WL 6956554, at *1.

Wesling challenged his March 2014 judgment of sentence on direct appeal and collaterally by way of PCRA petitions and appeals therefrom.

A. DIRECT APPEAL

In his counseled direct appeal, Wesling challenged his conviction on three grounds:

> [1]. Was there not insufficient evidence that any of the acts which formed the basis of the charges for which Mr. Wesling was convicted occurred in Pennsylvania and thus was not the evidence insufficient to find Mr. Wesling guilty of any charges?

> [2]. Was not the evidence insufficient to prove beyond a reasonable doubt that Mr. Wesling committed rape or attempt[ed] rape of K.B., in that there was no evidence of penile penetration or an attempt to penetrate?

> [3]. Should not the sentences on Counts 1 and 5 have merged?

> *Wesling*, 2015 WL 6956554, at *1; (Doc. 2, at 2).[4]

Denying the appeal and affirming judgment of sentence, the Superior Court of

---

[4] In support of his appeal, Wesling provided a Statement Pursuant to Pa.R.A.P. 1925(b), in which he (1) "complain[ed] that th[e] [trial court] lacked jurisdiction to sentence him, claiming that there was no evidence adduced at trial that any of the acts with which he was charged occurred in Pennsylvania"; (2) "challenge[d] the sufficiency of the evidence as it relate[d] to his convictions on Amended Count[s One and Five], contending that there was no evidence to support a finding of penetration or attempted penetration"; and (3) "complain[ed] that the sentences he received for Amended Count One [and] Count[s Five and Fifteen] were illegal in that the offenses should have merged for sentencing purposes." *Wesling*, 2015 WL 6956554, at *3.

Pennsylvania held that the trial judge's opinion "ably and comprehensively dispose[d] of Wesling's issues raised on appeal, with appropriate reference to the record and without legal error . . . ." *Wesling*, 2015 WL 6956554, at *1. Incorporated into the Superior Court's June 2015 Memorandum denying the appeal was the trial judge's Statement Pursuant to Pa.R.A.P. 1925(a).[5] The Rule 1925(a) Statement provides background and procedural history relevant to the instant petition, including the following:

> In 2009, Pocono Mountain Regional Police were contacted by investigators in Broward County, Florida, with information that Appellant may have sexually assaulted the victims in the above captioned case, sisters K.B. and P.U., over a period of time spanning about a decade when the two women were minors. Police interviews were conducted, resulting in the Commonwealth filing a criminal complaint on June 29, 2009, charging Appellant with seventy[-]two (72) various sex offenses.

> At the time of the filing of the criminal complaint, Appellant was incarcerated in Florida, pending trial on other sexual assault charges. A detainer was lodged against Appellant on July 1, 2009, and after the resolution of Appellant's case in Florida, Appellant was extradited to Pennsylvania where he posted bond on July 26, 2012.

> Also on July 26, 2012, Appellant waived his preliminary hearing under the counsel of Ms. Robin A. Spishock, Esq. of the Monroe County Public Defender Office. Appellant waived formal arraignment on September 24, 2012. On October 5, 2012, a Criminal Information was filed against Appellant charging him with twenty-nine (29) various sex offenses.

---

[5] Rule 1925(a) requires, with exceptions, that "the judge who entered the order giving rise to the notice of appeal . . . file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found." Rule 1925(b), in turn, requires the appellant, when directed by the trial judge, to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal." *See* Pa.R.A.P. 1925(a)-(b).

On February 27, 2013, Mr. George H. Newman, Esq. entered his appearance on behalf of Appellant. On March 13, 2013, Mr. Jack Fuchs, Esq., and Mr. Michael Salnick, Esq., were both granted *pro hac vice* admission for the purpose of representing Appellant.

On April 9, 2013, Appellant filed numerous Motions to Dismiss and a Motion for a Bill of Particulars. That same day, the Commonwealth filed its Notice pursuant to Pennsylvania Rule of Evidence 404(b) of its intent to introduce prior bad acts including the allegations of sexual assault in the State of Florida. On April 18, 2013, Appellant filed a Motion to Preclude the Commonwealth from introducing such 404(b) evidence. On May 14, 2013, the Commonwealth filed a Supplemental Notice of Prior Bad Acts indicating its intent to introduce evidence that Appellant sexually abused K.B. and P.U. in the Stale of New Jersey.

A hearing on Appellant's Pre-Trial Motions was held on May 14, 2013. Following the hearing, and in consideration of subsequently submitted briefs, this Court issued an Opinion and Order dated July 19, 2013 denying Appellant's Motions, which we incorporate here.

On September 19, 2013, Appellant filed several Motions in Limine. On September 20, 2013, the Commonwealth also filed several Motions in Limine. By three separate Orders dated October 2, 2013. Appellant's Motions in Limine were denied.

*Wesling*, 2015 WL 6956554, at *2 (footnotes omitted).

Regarding his first ground for appeal, the trial court found that "the trial testimony of victims K.B. and P.U. were replete with statements that they were sexually abused by Appellant in this Commonwealth, and specifically, in Monroe County." *Wesling*, 2015 WL 6956554, at *3. The court noted that "one of the primary backdrops to this unfortunate story is the house where the victims grew up, 1120 Deer Trail Road, located in Pocono Pines, Monroe County, Pennsylvania, 1835"; "Appellant was a frequent guest at the Deer Trail Road house, spending nights in Dorothy's room"; "K.B. testified to a rather vivid memory of an incident which occurred at the Deer Trail Road house"; "P.U. testified to incidents with

Appellant at her parent's house on Deer Trail Road"; and "another locus of the abuse testified to at trial was a house that Appellant bought in the late 1990s, located approximately one mile from the Deer Trail Road house." *Wesling*, 2015 WL 6956554, at \*4-5. Thus, the trial court found that "ample testimonial evidence was adduced at trial establishing that the acts which formed the basis of the charges for which Appellant was convicted did in fact occur in this Commonwealth and we disagree with Appellant's vacuous claim to the contrary." *Wesling*, 2015 WL 6956554, at \*5.

The trial court then rejected Wesling's second ground for appeal, i.e., insufficiency of evidence as to Counts One (rape by forcible compulsion) and Five (attempted rape by forcible compulsion) of the criminal information. Regarding Count One,[6] the court cited K.B.'s testimony, *inter alia*, that Wesling would have K.B. sit on his lap and his penis would be "in the area of her vagina or anus," noted that K.B. had reported to a detective that "probably just the tip would have gone inside my vagina just a little bit," and found, in the alternative, that there was sufficient evidence to convict on Count One based on testimony of oral intercourse. *Wesling*, 2015 WL 6956554, at \*6-7 (citing testimony including, "I remember him kissing me like on my vagina, and I remember like this uncomfortable pressure. I just

---

[6] "A person commits rape if he or she has sexual intercourse by forcible compulsion or by threat of forcible compulsion. 18 Pa.C.S.A. § 3121(a)(1). 'Sexual intercourse' is defined as 'intercourse per os or per anus, with some penetration however slight; emission is not required.' 18 Pa.C.S.A. § 3101. This 'include[s] vaginal intercourse, anal intercourse, oral intercourse, and penetration by a foreign object, but not digital penetration of the vagina.' *Commonwealth v. Kelley*, 569 Pa. 179, 188, 801 A.2d 551, 556 (Pa.2002)." *Wesling*, 2015 WL 6956554, at \*6.

remember feeling like all of his uncomfortable pressure . . . .”). The trial court continued, “Admittedly, Appellant’s parents’ house, where the described oral sex took place, is located in New Jersey. After she finished recounting her memory of this event, however, the Commonwealth asked her how many times similar incidents took place. To this, K.B. responded that ‘[i]t happened more than one time, but I couldn’t give you a number.’” *Wesling*, 2015 WL 6956554, at \*7 (brackets in original). Given K.B.’s testimony and that the large majority of events occurred in Monroe County, the trial court concluded that jurors could draw the reasonable inference that incidents of oral sex may have also occurred in Pennsylvania. *Wesling*, 2015 WL 6956554, at \*7. The same testimony, along with K.B.’s testimony about other occasions where, for example, Wesling pushed her up against the wall and pulled down her underwear, led the court to concluded that there was sufficient evidence in support of the jury’s conviction on Count Five (attempted rape). *Wesling*, 2015 WL 6956554, at \*8.

Finally, the trial court found no basis for Wesling’s third appeal ground concerning his contention that Amended Count One, Count Five, and Count Fifteen (contact or communication with a minor, sexual offense) should have merged. The trial court noted that, generally, a completed offense and an attempt to commit the same offense are merged but further noted that “there is no way of knowing whether the jury based their guilty verdicts for R[a]pe and Attempted Rape on the same criminal act.” *Wesling*, 2015 WL 6956554, at \*8. Therefore, finding “no way of knowing upon which facts the jury based its verdicts,” the court rejected this ground for appeal because “allowing the two convictions to merge for sentencing

purposes would be to give Appellant a volume discount on crime." *Wesling*, 2015 WL 6956554, at *8. The trial court then stated that Count Fifteen should not merge with Counts One and Five because the unlawful-contact conviction was not predicated solely on the convictions for rape and attempted rape. *Wesling*, 2015 WL 6956554, at *8 ("Even if it were, however, they would not merge for sentencing purposes.").

The Superior Court adopted the trial court's reasoning, and Wesling did not file a petition for allocator with the Pennsylvania Supreme Court seeking review of the Superior Court's denial of his direct appeal. (Doc. 2, at 2).

B. FIRST PCRA PETITION

After the Superior Court affirmed his judgment of sentence, Wesling filed a *pro se* PCRA petition, in October 2015, raising ineffective-assistance-of-trial-counsel and statute-of-limitations grounds. *Wesling*, No. CP-43-CR-0001697-2012; (Doc. 2, at 3).[7] The PCRA court appointed Brian S. Gaglione, Esq., to represent Wesling and set a November 23, 2015 deadline for Gaglione to file an amended PCRA petition "to cure any defects in the original *pro se* petition." (Doc. 2-1, at 2). After requesting three extensions of the deadline to file an amended PCRA petition, Gaglione filed a petition seeking to withdraw as counsel, along with

---

[7] With the filing of his habeas petition, Wesling did not provide a copy of his first PCRA petition for the Court's review, nor has he provided a copy of that petition in his response to the undersigned's show-cause order. (Doc. 2; Doc. 10, at 4; Doc. 14). As the undersigned previously noted, the Court looks, not to the original petition, but to the issues raised on appeal from that petition. (Doc. 10, at 4 (citing *Jacobs v. Folino*, No. 07-CV-00925, 2010 WL 6568289, at *8 (E.D. Pa. Aug. 10, 2010) ("A claim that is raised in a PCRA petition, but abandoned later in the course of the state court proceedings is not exhausted."), *report and recommendation adopted*, No. 07-CV-00925, 2011 WL 1627350 (E.D. Pa. Apr. 28, 2011)).

a no-merit letter in which he "framed the issues raised by [Wesling] as follows": "'the statute of limitations had run due to the passage of time between when these crimes where alleged to have occurred and when [Wesling] w[as] charged'"; and "that Attorney Spishock [i.e., Wesling's first trial counsel] 'rendered deficient performance and her counsel decisions had no reasonable basis other than to undermine the truth determining process.'" (Doc. 2-1, at 2).

In his no-merit letter, Gaglione first noted that there was no merit to Wesling's statute-of-limitations ground for collateral review given that the allegations were alleged to have occurred between 1990 and 2001, all of the offenses were committed against children, the applicable statute of limitations (relating to "major sexual offenses") was extended in 2004 to 12 years beyond attainment of a victim's 18th birthday, and the Commonwealth therefore had until 2011 and 2014 to bring the charges against Wesling. (Doc. 2-1, at 2). Gaglione then addressed the ineffective-assistance-of-counsel claim, which included, among other arguments, the contention that Spishock was ineffective for failing to file pretrial motions on Wesling's behalf:

> I can't see how Attorney Spishock compromised your defense in any way. You hired private counsel prior to trial in this matter. Private counsel filed a number of pre-trial motions on your behalf, including an Omnibus Motion and a Habeas Motion. The hearing that was held on the Habeas Motion is the functional equivalent of a preliminary hearing, so any error of judgment or missed opportunity that Attorney Spishock committed by waiving your preliminary hearing and not filing pre-trial motions was rectified. . . . [I]n looking at the pre-trial filings, the transcripts from trial, and the brief in support of your appeal, I was unable to find any issues that rise to the level necessary for collateral relief through the PCRA statute. In short, Ms. Spishock had very little to do with [Wesling's] defense and the people who actually defended [Wesling] appeared to do it competently and within the bounds of expected advocacy.

(Doc. 2-1, at 3-4 (ellipses and first set of brackets in original)).

Given Gaglione's no-merit letter, the PCRA court issued a March 18, 2016 Order, stating, "[a]fter an independent review of the record, this Court agrees with Attorney Gaglione that the issues raised in [Wesling's] PCRA Petition are without merit." (Doc. 2-1, at 4). The court denied the PCRA petition, advising Wesling that he had 30 days to appeal. (Doc. 2-1, at 4).

On March 29, 2016, Wesling appealed the denial of his first PCRA petition, raising five bases for reversal: (1) "[t]he trial court erred in allowing [Attorney Gaglione] to withdraw before amended [the] PCRA [petition] both denying [Wesling] a full and fair opportunity to present his claims and violated Pa.R.Cr.P 904 and 905 and also 42 Pa.C.S. § 9541"; (2) "Public Defender Robin Spishock's counsel was ineffective at a critical stage"; (3) the counsel who replaced Attorney Spishock ("Replacement Counsel") – "Attorney[s] Mr. Newman (local), Mr. Salnick (pro hac vice) and Mr. Fuchs (pro hac vice)" – provided ineffective assistance of counsel; (4) "[b]oth [Attorney Spishock] and [Replacement Counsel] w[ere] ineffective"; and (5) Wesling's "[c]onstitutional rights were violated when the statute of limitations had completed running in 2007 and [Wesling] was charged in 2009." (Doc. 2, at 3-4); *see also Wesling*, 2017 WL 1901717, at *1.

The Superior Court of Pennsylvania rejected all Wesling's grounds for appeal. First, the Superior Court held that the PCRA court had properly considered Attorney Gaglione's no-merit letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*), which cases are often

referred to as "*Turney/Finley*." *Wesling*, 2017 WL 1901717, at *1. The Superior Court noted that the record reflected, in accordance with *Turner/Finley*, that: (1) Gaglione's no-merit letter detailed the nature and extent of his review, listed each issue Wesling wished to have reviewed, and indicated why Gaglione believed the issues raised had no merit; (2) the PCRA court conducted its own independent review of the record and expressed its agreement with Gaglione's conclusion that the PCRA petition was meritless; and (3) Gaglione forwarded a copy of the application to withdraw as counsel with a copy of the no-merit letter and "a statement advising the PCRA petitioner that, in the event the trial court grants the application of counsel to withdraw, the petitioner has the right to proceed pro se, or with the assistance of privately retained counsel." *Wesling*, 2017 WL 1901717, at *2. Accordingly, the Superior Court held, "[b]ased on our independent review of the record, we conclude that the PCRA court's decision to permit Attorney Gaglione to withdraw from representation is supported by the record and free of legal error, and affirm on this basis as to Wesling's first issue." *Wesling*, 2017 WL 1901717, at *2.

Second, the Superior Court rejected the contention that Spishock was ineffective for counseling Wesling to waive a preliminary hearing and failing to file pretrial motions. *Wesling*, 2017 WL 1901717, at *3.[8] Applying the standard applicable to claims of ineffective assistance

---

[8] Wesling had contended that Spishock failed to make "'time[-]critical motions' requesting the prosecution to fix the dates when the alleged offenses occurred with reasonable certainty, thereby preventing Wesling from raising statute of limitations or alibi defenses." *Wesling*, 2017 WL 1901717, at *3 (brackets in original). Wesling also "claim[ed] that Attorney Spishock failed to communicate with [Replacement Counsel]." *Wesling*, 2017 WL 1901717,

of counsel, the Superior Court held that even if Wesling's claims had arguable merit and he had established that Spishock's course of conduct did not have a reasonable basis designed to effectuate his interest, Wesling failed to establish that "but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different." *Wesling*, 2017 WL 1901717, at *3. The Superior Court agreed with the PCRA court's reasoning that because Replacement Counsel had raised and argued a motion for a bill of particulars, Wesling could not establish that but for Spishock's allegedly ineffective representation, Wesling's criminal proceedings would have concluded with a different result. Further, the Superior Court noted that the PCRA court had properly addressed the arguments concerning waiver of the preliminary hearing when considering Attorney Gaglione's no-merit letter. *Wesling*, 2017 WL 1901717, at *3.

Third, regarding Wesling's claim that Replacement Counsel were ineffective, the Superior Court summarized Wesling's arguments as rejected them as follows:

> In his third issue, Wesling claims that [R]eplacement [C]ounsel were ineffective for failing to request a bill of particulars from the Commonwealth. Wesling argues that [R]eplacement [C]ounsel "failed to raise, litigate or preserve the issue of whether the Commonwealth proved the dates of the commission of the offenses beyond a reasonable doubt[,] and did not fix the date of the offenses with reasonable certainty[,]" thereby causing prejudice to Wesling. Wesling contends that, if the Commonwealth had presented "the realistic dates" of his alleged offenses, then he would have been able to produce evidence of his innocence, including receipts and bank statements

---

at *3. Regarding this latter contention, Wesling argue that while Replacement Counsel were permitted to file supplemental pretrial motions and request a hearing, they were "unable to recover from time critical omissions" committed by Spishock. *Wesling*, 2017 WL 1901717, at *3 (internal quotation marks omitted).

> Once again, Wesling has not addressed, or even discussed, the appropriate legal standard for establishing the ineffectiveness of his [R]eplacement [C]ounsel. Additionally, as noted above, the PCRA court determined that Wesling's third issue lacked merit because [R]eplacement [C]ounsel did, in fact, raise and argue a Motion for a bill of particulars. We agree with the reasoning of the PCRA court, which is supported by the record and free of legal error, and affirm on this basis as to Wesling's third issue.

*Wesling*, 2017 WL 1901717, at *3-4.

Fourth, the Superior Court held that Wesling's claim that "both groups of attorney[s] [were] ineffective" was not supported by a discussion in his appellate brief in violation of Pa.R.A.P. 2119(a). *Wesling*, 2017 WL 1901717, at *4. The Superior Court further noted that the PCRA court had deemed this "issue as too vague to be adequately addressed" and ultimately "determine[d] that Wesling failed to preserve this issue for our review." *Wesling*, 2017 WL 1901717, at *4.

In Wesling's fifth claim on appeal, he argued that although the statute defining the limitations period for bringing charges for sexual offenses of minors was amended in early 2000 to extend to twelve years from the date the victim turned 18 years old, "the legislature did not intend the amendment to apply to crimes committed prior to its effective date." *Wesling*, 2017 WL 1901717, at *4. The Superior Court held that this issue was deemed waived for Wesling's failure to raise it before trial, at trial, or on direct appeal, and that, even if not waived, the PCRA, in its orders, court correctly rejected Wesling's statute-of-limitations argument. *Wesling*, 2017 WL 1901717, at *5 n.8 (citing 42 Pa.C.S.A. § 9544(b) ("For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction

13

proceeding.")).

Seeking review of the Superior Court's denial of his appeal, Wesling filed a petition for allowance of appeal in the Pennsylvania Supreme Court, arguing that the Superior Court (1) unreasonably applied federal and state precedent in determining "[*United States v. Cronic*, 466 U.S. 648 (1984)]'s presumption of prejudice because the pre-trial stage in Pennsylvania is understood as a critical stage as in *Mitchell v Mason*"; (2) erred by holding a bill of particulars "is more in the nature of discovery" and denying Replacement Counsel's motion for a bill of particulars; (3) "violated the holding required by the Fourteenth Amendment Due Process Clause . . . and by Article 1, Section 9, of the Pennsylvania State Constitution where defendant is substantially denied an opportunity to present a defense"; (4) erred by applying *Strickland v. Washington* and "required showing a prejudice rather than applying *United States v. Cronic's* presumption-of-prejudice analysis"; (5) erred by finding "waived Petitioner's last issue because petitioner failed to raise the issue before trial, at trial, or on direct appeal but did raise the issue at the first available opportunity after no longer presented by complained on counsel as in *Commonwealth v. Grant*"; and (6) Superior Court erred in addressing Wesling's statute-of-limitations arguments. (Doc. 2, at 4-6).

The Pennsylvania Supreme Court denied review in February 2018. *Commonwealth v. Wesling*, 181 A.3d 286 (2018). On October 9, 2018, Wesling filed a petition for a writ of certiorari in the United States Supreme Court; Wesling's petition was denied on November 19, 2018. *Wesling v. Pennsylvania*, 139 S. Ct. 574 (2018).

C. HABEAS PETITION

On November 19, 2018, Wesling filed his instant habeas petition, raising six bases for relief: (1) his first trial counsel, Attorney Spishock, was ineffective for failing to timely demand a bill of particulars; (2) he was denied the right to adequately prepare for trial, in violation of the Sixth Amendment and the Fifth Amendment's double jeopardy clause, due to the combined effect of his Attorney Spishock's ineffective assistance in failing to demand a bill of particulars and the trial court's denial of Replacement Counsel's motion for a bill of particulars; (3) Attorney Spishock and the Commonwealth permitted an unconstitutionally vague indictment to proceed to trial; (4) the variance between the criminal information and the victims' trial testimonies resulted in constitutional violations and caused Wesling surprise and prejudice; (5) constitutional error resulted from the Commonwealth's proposal of an alternate theory of guilt, resulting in a verdict based on a possibly invalid theory; and (6) the trial court violated his Sixth Amendment rights by excluding evidence relating, *inter alia*, to Wesling living in Florida during the period of alleged criminal conduct and the fact that the victims excelled in school following the sexual conduct upon which he was convicted. (Doc. 2, at 7-59).

D. SECOND (PENDING) PCRA PETITION

On November 29, 2018, Wesling filed a second PCRA petition, received by the same PCRA court on December 4, 2018. (Doc. 14, at 45, 62). Although Wesling did not provide a copy of his second PCRA petition, his response to the undersigned's show-cause order includes copies of the PCRA court's December 13, 2018 and January 10, 2019 Notices of Disposition Without Hearing ("Notice of Disposition"). (Doc. 14, at 64-65, 69-70). In the

December 2018 Notice of Disposition, the PCRA court stated that it intended to dismiss the second PCRA petition without a hearing for, among other reason,[9] untimeliness. (Doc. 14, at 69). The court noted that Wesling's judgment became final on July 30, 2015, whereas he filed the second PCRA petition in December 2018. (Doc. 14, at 69). The PCRA court went on to note that "the entire section of the form PCRA Petition [Wesling] filed devoted to timeliness requirements is blank. Moreover, none of the allegations in [his second PCRA petition] would give rise to any timeliness exceptions." (Doc. 14, at 69). The court added that no new information had been discovered since the dismissal of his first PCRA petition upon Attorney Gaglione's filing of the no-merit letter. (Doc. 14, at 69-70). Because Wesling did not claim ineffectiveness of his PCRA counsel, his claims of alleged ineffectiveness of pretrial, trial, and/or appellate counsel would not "properly [be] addressed by a second or subsequent PCRA, particularly an untimely Petition." (Doc. 14, at 70). The court provided Wesling with 20 days to respond to its proposed dismissal. (Doc. 14, at 70).

In its January 2019 Notice of Disposition, the PCRA court acknowledged Wesling's January 4, 2019 response to the December 2018 Notice of Disposition but found that the response contained "a number of irrelevant assertions regarding the purported merits of his claim." (Doc. 14, at 62). Wesling contended that he had failed "plead an exception to the

---

[9] As for the other grounds, the PCRA court determined that (1) the petition was patently frivolous and without support in the record; (2) the facts alleged would not, even if proven, entitled Wesling to relief; (3) there are no genuine issues concerning any material fact; (4) Wesling is not entitled to PCRA relief; and (5) no purpose would be served by any further proceedings. (Doc. 14, at 69).

timeliness requirements of the PCRA in his original filing" because "he was unaware he had miscalculated the appropriate timeline due to a number of 'lock downs' at SCI-Somerset which resulted in [his] inability to access the law library." (Doc. 14, at 62). The PCRA court rejected this explanation given that the timeliness requirements of the PCRA had been in place since at least 1983, and when Wesling personally learned how to properly calculate his PCRA timeline was irrelevant. (Doc. 14, at 62 (citing *Commonwealth v. Secreti*, 134 A.3d 77, 80 (Pa. Super. 2016); 42 Pa.C.S.A. § 9545)). Additionally, the PCRA court noted that the lock downs cited by Wesling "began on February 16, 2018, and occurred periodically until October 19, 2018," whereas Wesling was required to file a timely PCRA petition by July 30, 2016. (Doc. 14, at 63).

Wesling appealed, and his appeal is still pending. The PCRA court and Wesling provided statements pursuant to Pa.R.A.P. 1925(a) and (b). Wesling raises five alleged constitutional errors on appeal: (1) the trial court erred when it denied his motion for a bill of particulars, violating his Sixth Amendment right to prepare a defense, raising double jeopardy concerns due to vagueness, and causing unfair surprise; (2) the trial court permitted a constitutionally deficient indictment to proceed to trial; (3) the trial court erred in "allowing the due process concerns of *Commonwealth v. Devlin*, 460 Pa. 508, 513, 333 A.2d 888, 891 (Pa. 1975) and *Berger v. United States*, 295 U.S. 78, 82 to be violated[]"; (4) the trial court erred in allowing a verdict to stand that was legally invalid theory (jurisdictional) . . ."; and (5) the trial court erred in denying his motion *in limine* by which he sought to introduce evidence that the victims' school life was inconsistent with sexual abuse, the victims did not live in

17

Pennsylvania on January 1, 1990, contrary to the criminal information, and Wesling lived in South Florida from mid-1998 to late 2000. (Doc. 14, at 68).  Regarding timeliness, Wesling argues that he "did not purposely submit an untimely [PCRA petition] but only through due diligence of filing [a] timely allowance of appeals to [the] Pennsylvania Supreme Court and the United States Supreme Court did [he] find such constitutional errors." (Doc. 14, at 68).

E.  THE COURT'S ORDER TO SHOW CAUSE

Wesling initially moved for a stay of this action based on the filing of his first PCRA petition, which, though denied on appeal, Wesling sought review of in his petition for writ of certiorari to the United States Supreme Court. (Doc. 3, at 1). However, on the same day Wesling commenced this action in the Western District of Pennsylvania, the Supreme Court denied certiorari. After the petition wended its way to this District, the undersigned provided Wesling with an opportunity to elect whether to proceed on his habeas as filed or to withdraw the petition so that he can file one all-inclusive petition containing any claims he wishes to raise for federal review. (Doc. 7). In response, Wesling filed two submissions, both on March 18, 2018: (1) a Notice of Intent indicating that he had filed his pending second PCRA petition, referencing his application for a motion for stay and abeyance, and stating that if Superior Court affirmed the PCRA court's denial of that second petition, he would seek to "amend/update" his present habeas petition "and bring all issues fully before lower court" to this Court; and (2) a completed Election Form by which Wesling elected that the Court rule on his petition as filed under 28 U.S.C. § 2254 and acknowledged that by doing so, he "may be forever barred from presenting in federal court any claim not presented in [his] petition." (Doc. 8; Doc. 9).

The undersigned thereafter screened Wesling's complaint and issued a show-cause order based on Wesling's request for a stay and his concession that he had not fully exhausted several of the claims raised in his habeas petition. The undersigned determined, in relevant part:

> After a review of the record, it is apparent that all but the first of these claims (i.e., that Wesling's first trial counsel was ineffective for failing to timely request a bill of particulars) were not raised in the state courts and are therefore unexhausted. Because the record does not include a copy of Wesling's PCRA petition, the Court cannot discern the exact contours of every argument raised therein. However, under these circumstances, the Court looks, not to the original petition, but to the issues raised on appeal from that petition, as "[a] claim that is raised in a PCRA petition, but abandoned later in the course of the state court proceedings is not exhausted." *Jacobs v. Folino*, No. CIV.A. 07-925, 2010 WL 6568289, at *8 (E.D. Pa. Aug. 10, 2010), *report and recommendation adopted*, No. 07-CV-925, 2011 WL 1627350 (E.D. Pa. Apr. 28, 2011). A comparison of the grounds raised in Wesling's PCRA appeal to those raised in his instant habeas compels the conclusion that Wesling has not exhausted the second through sixth bases of his habeas petition. While Wesling argues that his second and third habeas claims were implicit in his first ground for relief, the record before the Court does not reflect that he "fairly present[ed]" both the factual and legal substance of these claims to the state courts. *Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 280 (3d Cir. 2018) (internal quotation marks omitted). Nor can it be said that Wesling's fourth claim – asserting constitutional infirmities based on variances between the criminal information and trial testimonies and that the prosecution arbitrarily picked the dates of occurrences of criminal conduct in the indictment – was raised in the PCRA appeal.

(Doc. 10, at 3-5 (footnote omitted)).

Wesling responded on May 21, 2020 (Doc. 14), providing the reasons for which he is entitled to a stay and the bases upon which he believes he has good cause for not exhausting his habeas claims.

II.   LEGAL STANDARDS

A.   EXHAUSTION AND PROCEDURAL DEFAULT

Generally, a federal district court may not grant a habeas petition unless the petitioner has first exhausted all available state court remedies. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To satisfy the exhaustion requirement, a petitioner must establish "that he fairly presented the federal claim at each level of the established state-court system for review." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004). A "fairly presented" federal habeas claim is one that is "the substantial equivalent" of the claim that the state courts reviewed either on direct appeal or collateral review." *Pirela v. Horn*, 710 F. App'x 66, 79 (3d Cir. 2017), *cert. denied sub nom. Pirela v. Wetzel*, 139 S. Ct. 107 (2018). The petitioner must have presented both the "factual and legal substance" of a federal claim "to the state courts in a manner that put[] them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner establishes "cause and prejudice" or a "fundamental miscarriage of justice" to excuse the default. *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). To satisfy the first exception, petitioner must show: (1) cause for his failure to raise his claim in state court; and (2) prejudice to his case as a result of that failure. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). To demonstrate "cause" for a procedural default, the petitioner must show that something "external" to the defense impeded petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Once "cause" has been successfully demonstrated, petitioner must then prove "prejudice." Prejudice must be

something that "worked to [petitioner's] actual and substantial disadvantage . . . ." *Murray*, 477 U.S. at 494.

Alternatively, a federal court may excuse a procedural default when the petitioner establishes that the failure to review the claim will result in a "fundamental miscarriage of justice." *See Werts v. Vaughn*, 228 F.3d 178, 192–193 (3d Cir. 2000). A petitioner seeking to invoke this exception must present new evidence demonstrating "that constitutional error has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The exception is very limited, reserved as it is "for petitions presenting 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Andrews v. Wingard*, 249 F. Supp. 3d 806, 813 (E.D. Pa. 2017) (quoting *Coleman v. Greene*, 845 F.3d 73, 76 (3d Cir. 2017) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 401 (2013) (internal quotation marks omitted))).

B.  "Mixed" Petitions and Motions for Stays and Abeyances

The Supreme Court of the United States has held that a district court is precluded from considering a "mixed" petition such as Wesling's, where the petition contains both exhausted and unexhausted claims. *Rose v. Lundy*, 455 U.S. 509, 522 (1982). Accordingly, Wesling had four options available to him: (1) proceed with his habeas petition as filed, in which case the Court would be compelled to recommend dismissal of the petition without prejudice pursuant to *Lundy*'s total exhaustion rule; (2) withdraw the petition and refile a new petition once he exhausted his state remedies with respect to the currently unexhausted claims, which would

have the same effect as dismissal without prejudice; (3) amend his petition to delete all but his first claim and then proceed on the present petition;[10] or (4) he could request that this Court stay the instant federal habeas petition and hold it in abeyance while he sought to complete exhaustion in the state courts. *See generally Urcinoli v. Cathel*, 546 F.3d 269, 273–74 (3d Cir. 2008). Construing his *pro se* submissions liberally, Wesling chose the last option by filing a motion to stay these federal habeas proceedings and hold his petition in abeyance to permit him to exhaust his state court remedies with respect to the claims that, although denied as untimely, are pending on appeal before the Superior Court as part of his second PCRA petition. (Doc. 2; Doc. 7).

Stay and abeyance is permitted only in "limited circumstances." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). A district court is permitted to grant a stay only if "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 278; *see also Heleva v. Brooks*, 581 F.3d 187, 192 (3d Cir. 2009) (remanding for the District Court to determine "in the first instance" whether petitioner satisfied the three stay and abeyance requirements, i.e., "good cause, potentially meritorious claims, and lack of intentionally dilatory tactics"). In a typical case, the "good cause" proffered by the petitioner is that expiration of the applicable one-year federal limitations period under 28 U.S.C. § 2244(d) is imminent. *See, e.g., Gillette v. Cameron*, Civil Action No. 3:11-CV-1838,

---

[10] This likely would result in Wesling forfeiting federal habeas review with respect to his unexhausted claims pending in his second PCRA petition. *See* 28 U.S.C. § 2244(b).

2012 WL 928606, at *4 (M.D. Pa. Mar. 19, 2012) (noting that dismissal of a mixed federal petition with only one month left to refile after completing exhaustion of claims in state PCRA proceedings is "cutting it too close"); *see Rhines*, 544 U.S. at 275 ("If a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it under *Lundy* after the limitations period has expired, this will likely mean the termination of any federal review. . . . Similarly, if a district court dismisses a mixed petition close to the end of the 1-year period, the petitioner's chances of exhausting his claims in state court and refiling his petition in federal court before the limitations period runs are slim.").

## III.   DISCUSSION

Initially, the Court affirms its determination that all but Wesling's first habeas claim (regarding Spishok's failure to seek a bill of particulars) have not been fairly presented at each level of the established state-court system for review and, as such, are technically unexhausted. Wesling concedes that he did not raise his second and third habeas claims on appeal or collateral review but contends both that his "direct appeal counsel failed to raise the issue" and that the claim was "implicitly" raised in all his direct and collateral challenges to his convictions. (Doc. 2, at 26, 32, 34-35). While there is some overlap between his first and second habeas claims, by arguing Spishock failed to seek a bill of particulars (first claim), Wesling did not also raise the separate claim that the *trial court* violated his Fifth and Sixth Amendment rights by denying Replacement Counsel's motion for a bill of particulars (third claim). Similarly, apart from raising it in his second PCRA petition pending on appeal, Wesling never raised, as he does in his third habeas claim, the argument that the criminal information was constitutionally deficient and that Spishock and the Commonwealth

permitted him to be tried upon that unconstitutional charging instrument. As to the fourth habeas claim, Wesling argues that his direct appeal counsel failed to raise that ground but that he, Wesling, did raise it in his petition for allowance of appeal. (Doc. 2, at 40-41). However, there is no indication that Wesling presented the fourth habeas claim (i.e., variance between information and trial testimony unduly prejudiced him) in his first PCRA petition. Indeed, the sole grounds for PCRA appeal were ineffective assistance of counsel (by Spishock) and the statute of limitations bar. As to the fifth and sixth claims, Wesling concedes that he did not raise these claims on direct appeal or initial collateral review. (Doc. 2, at 47-52, 55-59)

Turning to Wesling's motion for a stay, in his response to the undersigned's show-cause order, he "offers the holding of *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005)," (Doc. 14, at 1-2), where the Supreme Court stated, "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." *Pace*, 544 U.S. at 416 (citing *Rhines*, 544 U.S. at 278).[11] Based on *Pace*, Wesling argues that he was and still is confused about "his timeliness" concerning the initiation of his state court proceedings. (Doc. 14, at 2). He states that "he filed his unexhausted claims PCRA

---

[11] The *Pace* Court held this to be true in the context of affirming the now well-settled rule that an untimely PCRA petition is not "properly filed" such that it operates to toll the one-year statute of limitations for filing habeas petitions under 28 U.S.C. § 2254; *Pace*, 544 U.S. at 417 ("Because the state court rejected petitioner's PCRA petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2244(d)(2)."). Addressing Pace's contention that it would be unfair to allow a petitioner who in good faith attempted to exhaust state remedies be barred in federal court because an untimely postconviction application (i.e., a PCRA petition here) did not toll the limitations period, the Court in *Pace* cited to *Rhines* and noted that a petitioner can avoid that problem by filing a protective federal habeas petition and seeking a stay and abeyance. 544 U.S. at 416-417.

November 29, 2018, within 90 days from the date certiorari was denied. Is not then the Petitioner's unexhausted claims PCRA timely? The Pennsylvania State Court states that Petitioner is not timely." (Doc. 14, at 2). Wesling then cites to *Lawrence v. Fla.*, 549 U.S. 327 (2007), where the Court held that the one-year limitations period for filing habeas petitions is not "tolled during the pendency of [a] petition for certiorari to th[e Supreme Court] seeking review of the denial of state postconviction relief." *Lawrence*, 549 U.S. at 331; (Doc. 14, at 2).

Given Wesling's reasonable confusion about the filing requirements of his PCRA petition and because he has presented well-argued habeas claims that the Court cannot, at this juncture, conclude are plainly meritless, the Court will grant his motion for a stay. As a preliminary matter, the *Rhines* framework for granting stays of cases involving mixed petitions does not apply if the purportedly unexhausted claims were denied as untimely and therefore procedurally defaulted.[12] That is, if Wesling's second PCRA petition is statutorily barred, as the PCRA court held here, then his stay application would be moot because those claims would be procedurally defaulted. *See, e.g.*, *Postley v. Rozum*, No. 08-CV-04479, 2009 WL 5217074, at *4 (E.D. Pa. Dec. 30, 2009) (noting that the concerns underlying the rationale in *Rhines* are not implicated in cases involving untimely PCRA claims that are procedurally defaulted in state court). However, even though it appears that the Pennsylvania Superior

---

[12] "[I]f the challenged claims are procedurally defaulted, not merely unexhausted, then the petition is no longer 'mixed,' the 'stay and abeyance' issue is moot, and the only question is whether the petitioner can overcome the procedural default of the challenged claims to allow them to be considered by the federal court pursuant to § 2254." *Boss v. Ludwick*, 863 F. Supp. 2d 845, 856 (N.D. Iowa 2012) ("[T]he first question is not whether the *Rhines* factors warrant a 'stay and abeyance,' but whether the 'stay and abeyance' issue is moot.").

Court will likely affirm the denial of Wesling's second PCRA petition, that determination "must be made in the first instance by the state court." *Eckles v. Erickson*, No. 06-CV-01870, 2007 WL 106520, at *7 (E.D. Pa. Jan. 9, 2007) (internal quotation marks omitted) (quoting *Stanley v. Shannon*, No. 06-CV-0323, 2006 WL 2191268, at *3 (E.D. Pa. July 31, 2006) ("Whether Stanley's second PCRA petition, which the PCRA court deemed untimely, meets a statutory exception to the PCRA timeliness provision, thus tolling the limitations period as properly filed, must be determined by the Superior Court of Pennsylvania.")).[13]

In his pending PCRA appeal, Wesling argues not only that his second PCRA was timely, but also that he met an exception to the PCRA time-bar based on governmental interference under 42 Pa.C.S.A. § 9545(b)(1). "Whether [Wesling] succeeds on his governmental interference exception to the [PCRA] time-bar is a matter for the state court to decide." *See Wise v. Rozum*, No. 3:12-CV-1360, 2013 WL 5797659, at *6 (M.D. Pa. Oct. 28, 2013).

A. GOOD CAUSE

Regarding Wesling's arguments for good cause, it is evident that if the Court were to dismiss his habeas petition under *Lundy* for failure to completely exhaust, Wesling would be

---

[13] "The Third Circuit confirmed in *Parker v. Kelchner* that 'likely futility' in state court of a petitioner's habeas claim 'does not render that claim "exhausted" within the meaning of § 2254(b)(1)(A) so as to excuse the petitioner's failure to exhaust that claim by presenting it in state court before asserting [it] in a federal habeas petition.'" *Eckles v. Erickson*, No. 06-CV-1870, 2007 WL 106520, at *7 (E.D. Pa. Jan. 9, 2007) (brackets in original) (quoting *Parker*, 429 F.3d at 64).

statutorily barred from filing another habeas petition. That is, although Wesling's instant habeas petition was timely filed (albeit barely), the one-year limitations period for § 2254 habeas petitions expired in late November 2018.[14] Even if ultimately deemed timely, Wesling's second PCRA petition would not extend the filing period because the one-year statute of limitations had run before he filed that second petition. *See Pace*, 544 U.S. at 417. Dismissal without prejudice, in other words, would preclude Wesling from filing a second habeas petition. Wesling has therefore established under *Rhine* that denial of a stay will affect his rights to refile a habeas petition to bring his second through sixth habeas claims.

Moreover, Wesling's PCRA counsel withdrew from representation before amending Wesling's *pro se* PCRA petition, and Wesling represents that he thereafter attempted to amend the PCRA petition himself to no avail. He also apparently believed that he could file his second PCRA petition after his petition for certiorari to the United States Supreme Court was

––––––––––––––––––––

[14] Wesling had one year from the date on which his "judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Wesling's direct appeal concluded on June 30, 2015, and the thirty days to seek allocator with the Pennsylvania Supreme Court expired on Saturday, July 30, 2015, the date on which judgment therefore became final. *See, e.g.*, *Commonwealth v. Minnefield*, No. 1020 WDA 2016, 2017 WL 2713462, at *2 (Pa. Super. Ct. June 23, 2017). Wesling had one year from that date to file his habeas petition, but he was also entitled to tolling of the period for the duration of the pendency of his first (timely) PCRA petition and appeals taken therefrom. By the time Wesling filed his first PCRA petition on October 15, 2015, 77 days had elapsed, which meant that he still had 288 days to file his habeas petition. The period from October 15, 2015, through the denial of allocator relating to the denial of his first PCRA petition, i.e., February 6, 2018, excluded from the limitations period computation. 28 U.S.C. § 2244(d)(2). Thus, as of February 6, 2018, Wesling still had 288 days to file his habeas petition. Wesling commenced the instant action 286 days later, on November 19, 2018, within the one-year limitations period.

resolved. (Doc. 14, at 2). While it is true that Wesling could have argued the issues raised in his pending PCRA petition on direct appeal or in his first PCRA petition, he has provided reasons for not doing so, and he raised his unexhausted claims in a second *pro se* PCRA petition, which he believed was timely. Wesling's appeal of his first PCRA petition terminated with the Pennsylvania Supreme Court's denial of review in February 2018, and within the same year, Wesling filed a petition for certiorari, a timely instant habeas petition, and a second PCRA petition. The Pennsylvania Supreme Court has directed that petitioners cannot file a second PCRA petition "until the resolution of review of the pending PCRA petition by the highest state court in which review is sought, or upon the expiration of the time for seeking such review." *Eckles*, 2007 WL 106520, at *7 (internal quotation marks omitted) (quoting *Com. v. Breakiron*, 781 A.2d 94, 99 (Pa. 2001) (citing *Commonwealth v. Lark*, 746 A.2d 585, 588 (Pa.2000))). Wesling appears to have waited for resolution of his first PCRA petition before filing his second. As such, given his reasonable confusion concerning the filing of his state petitions challenging his conviction, Wesling has sufficiently alleged good cause under *Rhines*.

    B.  M̲E̲R̲I̲T̲S̲

    Wesling has also satisfied the merits prong of the *Rhines* analysis. While his claims pending in the second PCRA petition may simply be time-barred and may not in any event form an adequate ground for successfully challenging his conviction and judgment of sentence, *Rhines* directs a finding of potential merit where the claims are not "plainly meritless." *Rhines*, 544 U.S. at 270. At this juncture, because the PCRA court denied Wesling's second PCRA petition as untimely, the Court does not have the benefit of a state-

level merits analysis of the claims raised therein.[15] If the Superior Court affirms the denial of Wesling's second PCRA petition for untimeliness, the Court will be required to determine whether Wesling has established good cause or that manifest injustice would result if he were barred from federal review. If the Superior Court reverses and finds grounds to permit the second PCRA petition to go forward, the PCRA court will be required to address the merits of Wesling's claims apart from finding them untimely.

### C. DILATORY LITIGATION TACTICS

As there is no indication on the present record that Wesling engaged in any dilatory litigation tactics, and under the totality of the circumstances presented here, Wesling's "interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions." *See Rhines*, 544 U.S. at 278.

### IV. CONCLUSION

The Court will grant Wesling's motion for a stay and abeyance based on the foregoing analysis. Because the scope of the Court's review of the bulk of Wesling's claims will be defined by the outcome of Wesling's appeal of the denial of his second PCRA petition, the Court will not at this time engage in a determination whether, assuming Wesling's second through sixth habeas claims are procedurally defaulted, he has nonetheless provided grounds

---

[15] *See, e.g.*, *Flynn v. Wetzel*, No. 13-CV-3212, 2013 WL 5797053, at *2 (E.D. Pa. Oct. 28, 2013) (citing *Graham v. Florida*, 560 U.S. 48 (2010) ("It is for the State, in the first instance, to explore the means and mechanisms for compliance."); *Picard v. Connor*, 404 U.S. 270, 275 (1971) (as matter of comity, states must be given initial opportunity to pass upon and correct alleged violations of petitioner's constitutional rights)).

to enable the Court to review those defaulted claims. The Court will condition "the stay of [Wesling's] federal habeas petition . . . upon [him] returning to federal court within thirty (30) days of the conclusion of his [pending] PCRA appeal." *See Eckles*, 2007 WL 106520, at *8. That is, he must inform the Court of the disposition of his second PCRA within 30 days of the conclusion of his pending PCRA appeal. If Wesling does not comply with this 30-day requirement, the stay and abeyance may be vacated and his habeas petition dismissed.

Wesling's motion for leave to proceed *in forma pauperis* (Doc. 1) is also granted.

An appropriate Order will follow.

**BY THE COURT:**

Dated: August 17, 2020

s/ *Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**